IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS O'TOOLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 C 2467 |
| v. ) | |
| ) | Magistrate Judge Sidney I. Schenkier |
| THOMAS E. PEREZ, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas O'Toole moves to compel the production of all documents identified in Defendant Secretary of Labor Thomas Perez's ("Secretary") Revised Privilege Log (doc. # 65: Pl.'s Mot.). The Secretary has now produced some of the documents originally listed on the log, but argues the Court should deny Mr. O'Toole's motion because the remaining documents are protected by the attorney-client privilege, work product doctrine, or deliberative process privilege (doc # 67: Def.'s Resp.). After reviewing the privilege log and conducting an *in camera* review of the remaining documents in dispute, we conclude each of the remaining documents is privileged and protected from disclosure.

I.

We begin with a brief description of the case. Mr. O'Toole brought this suit against Sharon A. Isaac, Gian-Thu Thi Nguyen, Mary Gail Marcotte, and the Secretary (doc. # 20). All defendants except the Secretary were dismissed on June 25, 2014 (*Id.*).

Mr. O'Toole is an employee in the Department of Labor ("DOL"), Bureau of Labor Statistics ("BLS"), working in the Chicago Regional Office (doc. # 46: Amend. Ans. to Amend. Compl. ¶ 1). Mr. O'Toole suffers from Diabetes Mellitus and has previously received a

recommendation from his doctor that he should eat meals at regularly scheduled times (*Id.* ¶¶ 27-28). Mr. O'Toole alleges that it is the policy of BLS's Chicago Regional Office to require employees to work through meals and outside of normal duty hours, which interfered with his ability to eat meals on a regular schedule and affected his blood glucose levels. Mr. O'Toole alleges that, as a result, he experienced an uncontrolled diabetic state in June 2012 (doc. # 33: Amend. Compl. ¶¶ 29-31). Mr. O'Toole alleges that he sought a reasonable accommodation in June 2012, which was denied (*Id.* ¶¶ 31-32; Amend. Ans. to Amend. Compl. ¶¶ 31-32). Mr. O'Toole claims that the denial of his requested accommodation constituted a violation of the Rehabilitation Act (Amend. Compl. ¶¶ 26, 31-33). Mr. O'Toole claims the Secretary then harassed and retaliated against him in violation of the Rehabilitation Act by allegedly subjecting him to heightened scrutiny, disciplinary charges, and fabricating errors on his evaluation forms; denying a within grade pay increase; placing him on administrative leave on June 9, 2014; and removing him from his position on August 15, 2014 (*Id.* ¶¶ 34-44). Mr. O'Toole also alleges that the Secretary violated his duty to preserve evidence relevant to his Equal Employment Opportunity ("EEO") claim and the present action, and also willfully destroyed and tampered with official government records (*Id.* ¶¶ 45-48).

As part of the discovery process, the Secretary served a log on Mr. O'Toole identifying documents withheld from production based on the assertion of privilege. This Court ordered the Secretary to serve on Mr. O'Toole a revised privilege log (doc. # 64). The Court further ordered that if disputes remained after the meet and confer process, defendant was to deliver any challenged documents that were withheld on privilege grounds to chambers for *in camera* review, along with a copy of the privilege log (*Id.*). The parties also were ordered to file memoranda addressing their respective position on the issue of privilege (*id.*), which they have

2

done. The meet and confer process did not resolve the parties' disagreements, and on July 21, 2016, Mr. O'Toole filed the present motion to compel all documents identified in the privilege log.

One category of documents Mr. O'Toole seeks is "litigation holds," which the Secretary has elected to produce.[1] Thus, these documents are no longer in issue. The Secretary continues to assert privilege for three remaining categories of documents that Mr. O'Toole seeks: (1) emails between DOL counsel and DOL employees regarding record preservation,[2] which the Secretary argues are protected by attorney-client privilege and the work product doctrine; (2) a litigation memorandum prepared by the DOL's Office of the Solicitor for the Assistant United States Attorney assigned to the case,[3] which the Secretary argues is protected by the attorney-client privilege and work product doctrine; and (3) a draft final agency decision from the DOL's Civil Rights Center and related emails,[4] which the Secretary asserts are protected by the deliberative process privilege. We address each category in turn.

## II.

We begin by setting forth the governing principles for determining whether the documents at issue are protected by the privileges the Secretary asserts.

Seventh Circuit law states that the attorney-client privilege applies:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made

---

[1] The litigation holds identified on the log are Bates numbers 5744-49, 5758, and 5765-69. Although the Revised Privilege Log did not include Bates numbers 6101-02, the Secretary informed Mr. O'Toole that this document was inadvertently omitted form the log and was being produced (Def.'s Resp., Ex A at 1).

[2] The emails are Bates numbered 5750-57 and 5760-64. The Secretary's response does not include Bates number 5759, but that document is included in the privilege log with 5760 because it is in the same email chain, and it should have been incorporated in the designation of page numbers for these emails.

[3] The litigation memorandum is Bates numbered 3618-32.

[4] The emails and the draft final agency decision are Bates numbered 3563-3617.

3

in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). The party asserting the attorney-client privilege has the burden of establishing the elements on a document-by-document basis. *Id.* "[A]ttorney-client privilege serves the important policy of fostering 'full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice.'" *Evans v. City of Chicago*, 231 F.R.D. 302, 311 (N.D. Ill. Aug. 25, 2005) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

Communications from an attorney to his or her client are not automatically privileged, but they will be privileged:

> (1) if it is shown that the client had a reasonable expectation in the confidentiality of the statement; or, put in another way, if the statement reflects a client communication that was necessary to obtain informed legal advice (and) which might not have been made absent the privilege . . .; or (2) if the communications "tend to directly or indirectly reveal a client confidence."

*Evans*, 231 F.R.D. at 312 (quoting *IBJ Whitehall Bank & Trust Co. v. Cory & Associates, Inc.*, No. 97 C 5827, 1999 WL 617842, at *3 (N.D. Ill. Aug.12, 1999)). The attorney-client privilege can also apply to communications between employees if the communication seeks information from another employee on behalf of counsel, or would reveal the advice of counsel. *IBJ Whitehall Bank & Trust Co.*, 1999 WL 617842, at *6.

The work product doctrine applies to protect documents and tangible things "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "If the Court orders discovery of those materials, it must protect against disclosure

of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). "[N]on-lawyer employees may exchange or collaborate on work product without waiving the work product privilege, so long as the work product will eventually assist in litigation." *IBJ Whitehall Bank & Trust Co.*, 1999 WL 617842, at *6.

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). "Since frank discussion of legal and policy matters is essential to the decision-making process of a governmental agency, communications made prior to and as a part of an agency determination are protected from disclosure." *Id.*

### A.

The emails Mr. O'Toole seeks regarding record preservation, Bates numbers 5750-57 and 5759-64, are by and between DOL counsel and DOL employees, and they focus on the preservation of electronic information for litigation. These documents all discuss the legal advice that was given by DOL's counsel regarding record retention and how the DOL employees could best comply with counsel's advice. The statements all directly or indirectly reveal client confidences because they candidly speak about the records preservation process and what was done, including when, how, and by whom. Further, the emails exchanged between and among DOL employees all sought information on behalf of counsel because they were directly related to the document retention policies DOL counsel distributed to them. Disclosure of these emails from DOL counsel to DOL employees, from DOL employees to DOL counsel, and among DOL employees could reveal the protected mental impressions of DOL counsel. The attorney-client privilege and the work product doctrine protect these emails.

5

Mr. O'Toole concedes in his motion that attorney-client privilege may apply to the documents from counsel regarding record preservation, but argues that his accusation of "spoliation" is sufficient to strip the Secretary of the privilege (Pl.'s Mot. at 2). In assessing this argument, we first consider the briefing and ruling on the Secretary's motion to dismiss Count III, which is where Mr. O'Toole pleads the claim he calls "spoliaton." In seeking to dismiss Count III, the Secretary argued that Mr. O'Toole's allegations of willful destruction of evidence and tampering constituted a negligence claim under Illinois law (doc. #39: Def.'s Mot. to Dismiss at 5-6).[5] In response to the motion to dismiss, Mr. O'Toole likewise framed his argument in terms of the negligent spoliation under Illinois law. He added a very brief section arguing criminal alteration and falsification of records pursuant to 18 U.S.C. § 1519,[6] but only to argue that violation of the criminal statute goes to the breach of a duty necessary to state a claim for negligent spoliation of evidence (doc. #44: Pl.'s Resp. to Mot. to Dismiss at 6-9). In ruling on the motion, the district judge ordered that "[s]poliation as the caption of Count III [be] stricken as potentially misleading," but did not dismiss Count III (doc. # 45). The Secretary then filed his amended answer to the complaint with the heading stating only that Count III was a "pendant [sic] state tort claim" (Amend. Ans. to Amend. Compl. at 14). The content of Count III did not change.

---

[5] Under Illinois law, those elements for negligent spoliation of evidence are: "(1) the defendant owed a duty to the plaintiff to preserve the evidence, (2) the defendant breached that duty by losing or destroying the evidence, (3) the loss or destruction of the evidence was the proximate cause of the plaintiff's inability to prove an underlying lawsuit, and (4) as a result, the plaintiff suffered actual damages." *Hartmann Realtors v. Biffar*, 13 N.E.3d 350, 356-57 (Ill App. Ct. 2014).

[6] "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both." 18 U.S.C. § 1519.

Thus, it is difficult to ascertain precisely what independent state law claim Mr. O'Toole seeks to assert in Count III. The district judge clearly does not view it as a spoliation claim. But even if viewed through that lens, Mr. O'Toole's arguments do not justify stripping that privilege under either federal or state law standards.[7]

Mr. O'Toole argues that, pursuant to case law from other districts, when spoliation occurs, litigation hold letters will be discoverable (Pl.'s Mot. at 3). Here, the Secretary has produced the litigation hold letters. However, Mr. O'Toole's motion seeks significantly more by requesting all privileged documents regarding preservation. In aid of that argument, Mr. O'Toole states that specific details of his spoliation allegations were raised before the Merit Systems Protection Board in a motion for spoliation sanctions and a supplemental motion for spoliation sanctions, which he attached to his present motion (*Id.*). In these papers, Mr. O'Toole appears to have argued that his supervisor, Autumn Nguyen, and his "training mentors," Sharon Isaac and Mary Marcotte, conspired to tamper with his written on-the-job training evaluation and falsified evaluations to give him negative performance reviews. Mr. O'Toole also contends those same people deleted files to destroy metadata about the changes made to the electronic records (Pl.'s Mot. at 3-4, 48-49).[8] In support of his argument, Mr. O'Toole principally points to screenshots showing that on-the-job training evaluation checklists created between April 9 and July 27, 2012

---

[7] *Memorial Hosp. for McHenry County v. Shadur* provides guidance on when state law and when federal law applies for privilege in cases presenting both state and federal law claims. 664 F.2d 1058 (7th Cir. 1981). That case was brought over alleged restraint of trade in violation of federal and state antitrust laws. *Id.* at 1059-60. In that case, a hospital asserted a state-law privilege to protect the results of internal disciplinary proceedings, which the district judge determined should not apply, leading to an action for extraordinary relief in the Seventh Circuit. (*Id.* at 1060). The Seventh Circuit reiterated that civil actions brought in federal court are governed by the Federal Rules of Civil Procedure, but that for state law claims, state law shall apply. (*Id.* at 1061). Ultimately, the Court determined that the principal claim in the case arose under the Sherman Act, a federal law, and therefore that state law did not govern the assertion of privilege, but the court also emphasized that comity between state and federal sovereignties impels federal courts to recognize state privileges at no cost to the federal substantive and procedural policy. (*Id.*)

[8] The Court references the page numbers that exist on the electronically filed version of Mr. O'Toole's motion and exhibits. The courtesy copy provided by Mr. O'Toole was not organized in a clearly numbered manner that matched his electronic filing.

were modified on either July 27 or July 30, 2012 (*Id.* at 61-67). Mr. O'Toole also points to an allegedly inaccurate tally of "yes" and "no" checkboxes on the on-the-job checklists as evidence of fabrication (Pl.'s Mot. at 18). The Secretary responds by pointing to DOL's response in front of the Merit System Protection Board, which stated the checklists are updated on a rolling basis because they largely depend on when a mentee submits his or her data to their mentor (Def.'s Resp., Ex. B at 2). Further, the Secretary previously argued that the checklists are used solely as training aids, and they do not affect performance evaluations and pay increases (*Id.*)

Mr. O'Toole's allegations do not establish a basis to deprive the Secretary of the privilege with respect to the disputed documents. Mr. O'Toole cites no authority to show that the alleged conduct he describes provides a sufficient basis to override the privilege. To the extent Mr. O'Toole asserts that his need for information would trump the work product protection, we disagree. Mr. O'Toole has other avenues through discovery that are sufficient to allow him to obtain information that supports – or undermines – his claims in Count III.

Mr. O'Toole also asserts that following Ms. Nguyen's deposition, the "TEO" subfolder containing his files was deleted from the shared drive, citing a screenshot as evidence (Pl.'s Mot. at 49, 60). The screenshot, however, only shows the security settings for the file and indicates the file is owned by Ms. Nguyen (*Id.*). Mr. O'Toole has not shown how that screenshot demonstrates a deletion. To the extent that his issue is that he was denied access to his own files, the DOL has previously asserted, and the Court agrees, that the proper course of action would have been to request access, and not to assume deletion (*see* Def.'s Resp, Ex. B at 3).

In sum, the emails are protected by the attorney-client privilege and work product doctrine. Mr. O'Toole's unclear claim that he classifies as one for spoliation does not justify

8

removing that privilege. The motion is denied as to Mr. O'Toole's request for emails regarding record preservation.

**B.**

Mr. O'Toole challenges the Secretary's withholding of a litigation memorandum, Bates numbered 3618-32, dated May 30, 2014, which was prepared by the DOL's Office of the Solicitor for the Assistant United States Attorney assigned to the case. Mr. O'Toole justifies this request by stating "Defendants' description of 'Litigation memorandum' does not provide sufficient information for Plaintiff to make a determination of the appropriateness of the claimed privilege" – even though the log says the document concerns this very lawsuit. The Secretary contends that the memorandum is protected from disclosure by the attorney-client privilege and work product doctrine because it contains confidential client information and detailed legal analysis of Mr. O'Toole's claims and defenses.

We have reviewed the memorandum *in camera*. The memorandum discusses extensively the issues in this lawsuit and in Mr. O'Toole's administrative action, includes significant amounts of client information that was gathered by the DOL solicitor as part of the previous and pending action, and offers assessments of claims and discussed litigation strategy. The document plainly is protected by the attorney-client privilege and work product doctrine. We therefore deny Mr. O'Toole's request for the litigation memorandum.

**C.**

Lastly, Mr. O'Toole seeks a draft final agency decision from the DOL's Civil Rights Center and related emails, logged as Bates numbers 3563-3617. The Secretary argues that the documents reveal pre-decision deliberations regarding Mr. O'Toole's discrimination claim, justifying the application of the deliberative process privilege. Mr. O'Toole, by contrast, argues

9

that the deliberative process privilege does not apply because "the CRC is not an Administrative Body setting 'law or policy', but rather an investigative body that is suppose [sic] to investigate civil rights claims against agencies" (Pl.'s Mot. at 2).

Mr. O'Toole's argument that the deliberative process privilege does not apply because the DOL's Civil Rights Center does not set law or policy is incorrect. The court in *Farley* applied the privilege to a pre-decisional and deliberative referral memorandum from the Federal Trade Commission ("FTC") staff to the Department of Justice, as well as to staff memoranda to senior agency officials that contained recommendations, legal interpretations, and drafts of litigation documents. *Farley*, 11 F.3d at 1389. These were documents related to a litigation action; they were not related to any official adoption of a law or policy. *Farley* demonstrates that documents related to the *implementation* of an agency's law or policy – such as the emails and draft final agency decision in this case – are precisely the type of documents that are protected under deliberative process privilege.

Because the documents are within the scope of the deliberative process privilege, we would require the government to produce them only if Mr. O'Toole showed a particularized need for the documents that outweighed the government's interest in not disclosing them. *Farley*, 11 F.3d at 1389. He has made no such showing here.

## CONCLUSION

For the reasons set forth above, the Court denies Plaintiff's Motion to Compel Production of Documents Identified in Defendant's Privilege Log (doc. # 65).

ENTER:

/s/ Sidney I. Schenkier
SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: September 16, 2016